1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Baja Developments LLC, a New York)        No. CV-09-756-PHX-LOA
    limited liability company,            )
10                                         )   **FINDINGS OF FACT,**
                  Plaintiff,               )   **CONCLUSIONS OF LAW,**
11                                         )   **AND REPORT AND**
    vs.                                    )   **RECOMMENDATION**
12                                         )
    TSD Loreto Partners, S en C. por A. de)
13  C.V., a Mexican limited liability company,)
                                           )
14               Defendant.                )
                                           )
15  _____)

16          A default damages hearing was conducted in open court on April 21, 2010 as

17  a result of the entry of default against Defendant TSD Loreto Partners, S en C. por A. de C.V.

18  ("Loreto Partners"),[1] a Mexican limited liability company, on Plaintiff Baja Developments

19  LLC's ("Baja New York") Complaint. (docket ## 18-20) Testifying for Baja New York was

20  David Butterfield, former Chairman and Development Manager for Loreto Partners until

21  August, 2007 and founder and current managing member of Baja New York. (Transcript

22  ("Tr.") at 13, 18 of April 21, 2010 damages hearing)

23          Upon Plaintiff's Application for Default and Default Hearing Memorandum,

24  docket # 20, and Plaintiff's Motion for Award of Attorneys' Fees and Costs, docket # 18, the

25

26  _____

27          [1] The Defendant's full name is TSD Loreto Partners, *sociedad en comandita por*
    *acciones de capital variable*. Per the Court's senior Spanish interpreter, Luis Velasco, this
    Spanish entity literally translated means a "company in silent partnership by stock." (docket ##
28  1, Exhibit ("Exh") 1 at 2; 19 at 1)

Court hereby enters its findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

### **BACKGROUND**

This is a breach of contract action. On May 10, 2004, Loreto Partners and Baja New York entered into a contract, called an "Intercompany Services Agreement" ("ISA"), a copy of which is attached as Exhibit 1 to the Complaint. (docket # 1, Exh 1 at 2-3) The Complaint was filed on April 13, 2009 and served upon the Defendant Loreto Partners through "Embree Charles (Chuck) Bedsole a person authorized to accept (sic) 8535 Groveland Dr.[,] Dallas, Texas 75218 in Dallas County[,] Texas[]" on January 23, 2010. (docket # 13) No answer or other responsive pleading has been filed by, or on behalf of, Loreto Partners, and the time for filing a responsive pleading has elapsed. The Clerk of the Court entered Loreto Partners' default on March 18, 2010 upon Baja New York's Notice of Service and Application to the Clerk for Entry of Default.[2] (docket ## 15-16) On April 16, 2010, Baja New York filed its Application for Entry of Default Judgment and Default Hearing Memorandum, requesting an evidentiary hearing pursuant to Rule 55(b)(2), FED.R.CIV.P. The Complaint seeks non-liquidated, compensatory damages "in excess of $7,000,000[]" "in an amount to be proven at trial;" an accounting; Baja New York's costs; reasonable attorneys' fees; and "[f]or such other and further relief as the Court deems just and fair and proper." (docket ## 1 at 5, ¶ 20; 6)

Following entry of default, Rule 55(b)(2), FED.R.CIV.P., permits a district court to enter final judgment in a case. Entry of default judgment, however, is not a matter of right. *Warner Bros. Entm't Inc. v. Caridi*, 346 F.Supp.2d 1068, 1071 (C.D. Cal. 2004). Entry of default judgment is entirely within a court's discretion and may be refused if the judge determines no justifiable claim has been alleged or that a default judgment is inappropriate for other reasons. *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986); *Aldabe v. Aldabe*,

---

[2] A copy of this Notice and Application was mailed to TSD Loreto Partners, S en C. Por A. De C.V., c/o Embree Charles Bedsole, 8535 Groveland Drive, Dallas, Texas 75218 on March 17, 2010. (docket # 15 at 2)

616 F.2d 1089, 1092 (9th Cir. 1980)). Well-pled factual allegations of a complaint are taken as true, except for those allegations relating to damages. *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

In determining damages, a district court can rely on the declarations submitted by the plaintiff or conduct a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). "A plaintiff's burden in 'proving up' damages is relatively lenient." *Philip Morris USA,* 219 F.R.D. at 498. "[F]undamental fairness, required by the due process of law, limits the scope of relief[,]" *id.*, which is, undoubtedly, why Rule 54(c), Fed.R.Civ.P., proscribes that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Rule 54(c), Fed.R.Civ.P.

The Ninth Circuit has enumerated seven factors for a district court to consider in determining whether to grant a default judgment: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986); *Truong Giany Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173 (N.D. Cal. 2007). After considering and balancing all these factors, the undersigned finds that they weigh strongly in favor of entering the default judgment recommended herein.

Because the Complaint seeks non-liquidated, compensatory damages "in excess of $7,000,000[]" which is not "a sum certain or a sum that [could] be made certain by computation" within the meaning of Rule 55(b), FED.R.CIV.P., the Court conducted an on-the-record Rule 55(b)(2) default damages hearing on April 21, 2010.

# JURISDICTION

## I. Magistrate-Judge Jurisdiction

Plaintiff Baja New York has consented in writing to magistrate-judge juris-diction pursuant to 28 U.S.C. § 636(c)(1). (docket # 7) Arguably, when a plaintiff consents in writing to a United States magistrate judge, that magistrate judge has juris-diction to conduct a default damages hearing and enter final judgment against a defendant even though that defendant has not consented because that defendant is technically not a party by failing to appear in the action. *United States v. Real Property*, 135 F.3d 1312 (9th Cir. 1998); *United States v. 8136 S. Dobson Street*, 125 F.3d 1076 (7th Cir. 1997); *EEOC v. West Louisiana Health Svcs., Inc.*, 959 F.2d 1277, 1279-80 (5th Cir. 1992); *Giove v. Stanko*, 882 F.2d 1316, 1318 (8th Cir. 1989). Because the Ninth Circuit has not expressly addressed this issue, and, at least, one Circuit Court has found to the contrary,[3] in an abundance of caution, the undersigned Magistrate Judge will proceed by Report and Recommendation to the Phoenix Presiding District Judge for April, 2010, the Honorable Neil V. Wake, United States District Judge.

## II. Subject Matter Jurisdiction

Diversity jurisdiction may be based on citizenship as well as alienage. 28 U.S.C. § 1332(a)(2)-(4). "The complete diversity rule applies in alienage cases." *Gallego v. Garcia*, 2008 WL 793459, * 1 (S.D. Cal. 2008) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). "This mea[n]s that all plaintiffs must be of different citizenship than all defendants." *Id.* (citation omitted). Thus, in order to properly invoke diversity jurisdiction, Baja New York must affirmatively allege facts demonstrating that the citizenship of the parties is completely diverse. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir. 1998). The party seeking to invoke federal jurisdiction under 28 U.S.C. § 1332 bears the

---

[3] *Henry v. Tri-Services, Inc.*, 33 F.3d 931, 932 (8th Cir. 1994) ("We hold that the magistrate judge lacked authority to enter final judgment because [the defaulted party] did not consent to have the matter tried to the magistrate judge.")

burden of demonstrating that grounds for diversity exist, that diversity is complete, and its claim is supported with "competent proof" by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp*., 298 U.S. 178, 189 (1936); *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 403-04 (9th Cir. 1996); *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

Baja New York's Complaint alleges that the United States District Court for the District of Arizona "has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and because alienage jurisdiction exists[.]" (docket # 1 at 2) This jurisdictional issue is not, however, as simple and straightforward as it initially appears.

The Complaint and uncontradicted testimony of Mr. Butterfield establish that Loreto Partners is a Mexican limited liability company, organized under the laws of Mexico, known as a *sociedad en comandita por acciones de capital variable* and doing business in Arizona. (*Id*.) Loreto Partners was the developer of a large real estate development project in Loreto Bay, Mexico (the "Loreto Bay Development") located on the shores of the Sea of Cortés, also known as the Gulf of California, in the northeastern region of the State of Baja California Sur, Mexico. (*Id*.) Loreto Partners' office for the management of the Loreto Bay Development was formerly located at Mission San Ignacio S/N, Esquina Cabot, Fraccionamiento Nopolo, 23880, Loreto Bay, Baja California Sur, Mexico but has been abandoned since the filing of the Complaint. Loreto Partners is a business entity recognized as a "juridical person" under the laws of Mexico.[4] (*Id*.; docket # 20, Exh 1)

Baja New York is a New York limited liability company that has substantial operations in Maricopa County, Arizona. (*Id*.) It is registered as a foreign limited liability company with the Arizona Corporation Commission. All individual members of Baja New York are citizens of the states of the United States or Puerto Rico or are corporations

---

[4] See the declaration of Plaintiff's expert on Mexican law, Jose Antonio Diez de Bonilla-Martinez, an attorney authorized to practice law in Mexico and a partner in the international law firm of Baker & McKenzie. (docket # 20, Exh 1)

organized under the laws of states of the United States. (*Id.*) Some members of Baja New York are limited liability companies, partnerships or trusts, and the ownership of all such members is ultimately traceable to individuals, corporations, trustees and beneficiaries that are citizens of the United States. (*Id.*)

Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and the controversy is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).[5]

Baja New York alleged that Loreto Partners is a "foreign entity established under the laws of Mexico and recognized as a juridical person under Mexican law." (docket # 1 at 2) Because Loreto Partners is a juridical person under Mexican law, Baja New York argues, the citizenship of Loreto Partners' investors and partners is irrelevant. (docket # 20 at 5) Indeed, the Ninth Circuit has held that district courts need not assess the citizenship of every investor of an "unincorporated" foreign business entity because "[s]ection 1332(a)(2) applies to foreign legal entities of all kinds, so long as the entity is considered a juridical person under the law that created it." *Cohn v. Rosenfeld*, 733 F.2d 625, 629 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). *Cohn* involved an "anstalt" which resembles a limited

---

[5] Title 28 U.S.C. § 1332(a)(2), the alienage statute, provides in pertinent part:

> a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> *       *       *       *
> (2) citizens of a State and citizens or subjects of a foreign state; . . . .

28 U.S.C. § 1332(a)(2); *Oteng v. Golden Star Resources, Ltd.*, 615 F.Supp.2d 1228, 1234 (D.Colo., 2009) (quoting *JP Morgan Chase Bank v. Traffic Stream (BVI)*, 536 U.S. 88, 91 (2002) (A "corporation of a foreign State is, for purposes of jurisdiction in the courts of the United States, to be deemed, constructively, a citizen or subject of such State") (internal quotation marks omitted) and Restatement (Third) of Foreign Relations Law of the United States § 213 (1986) ("For purposes of international law, a corporation has the nationality of the state under the laws of which the corporation is organized.")). Also see, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004).

liability company or business trust under the laws of Liechten-stein. *Id*. at 628-629. The Ninth Circuit held that an "anstalt" is a juridical person under Liechtenstein law, and, therefore, the citizenship of its investors was irrelevant for purposes of determining subject matter jurisdiction. *Id*. at 629. *Cohn* remains controlling authority in the Ninth Circuit.

Baja New York has not provided, nor has this Court's independent research discovered, any authority addressing the issue of diversity jurisdiction of a *sociedad en comandita* organized under Mexican law. The Supreme Court has expressly held, how-ever, that a *sociedad en comandita* is a juridical person under the laws of Puerto Rico. *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 481 (1933) (holding a *sociedad en comandita* is a juridical person under Puerto Rican law and, therefore, the citizenship of the entity, and not its members, was determinative of jurisdiction). As the Supreme Court explained: "In the law of its creation the *sociedad* is consistently regarded as a juridical person. It may contract, own property and transact business, sue and be sued in its own name and right." *Id*. "[Its] characteristics under the Codes of Puerto Rico give content to their declaration that the *sociedad* is a juridical person. That personality is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the *sociedad* has a different status for purposes of federal jurisdiction than a corporation organized under that law." *Id*. at 482.

The Court finds that Plaintiff Baja New York has met its burden of demon-strating that grounds for diversity jurisdiction exist and its claim is supported with competent proof by a preponderance of the evidence, i.e., the declaration of Plaintiff's expert on Mexican law, Jose Antonio Diez de Bonilla-Martinez.[6] (docket # 20, Exh 1 at 2-3) Thus,

---

[6] Mr. Jose Antonio Diez de Bonilla-Martinez' declaration indicates, *inter alia*, that:

\*   \*   \*   \*   \*

3. A *sociedad en comandita por acciones* is a juridical legal entity under the laws of Mexico.

\*   \*   \*   \*   \*

5. A *sociedad en comandita por acciones* may sue in its own name in the courts of Mexico.

the Court concludes that it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and the parties are completely diverse.  (docket # # 1, 19 at 3)  Venue is also proper in this District Court pursuant to 28 U.S.C. § 1391(a).

### III. Personal Jurisdiction

The Ninth Circuit employs a three-prong test to determine whether a District Court has personal jurisdiction over a defendant. First, "the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id*.  Third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Id*.  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*.  If the plaintiff meets such burden, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*.

It is undisputed that Defendant Loreto Partners entered into a long term contract with Baja New York in Maricopa County, Arizona for the provision of

> financial and accounting services in Arizona, such as maintaining a general ledger, accounts receivable, accounts payable and fixed asset records; provision of billing and collection services; preparation of various types of income tax returns; preparation of financial statements; provision of tax and payroll records; provision of employee benefits; provision of legal services; provision of information technology services, infrastructure and personnel; provision of construction management and architectural design planning services; and other services – all on behalf of the defendant, as alleged [in the Complaint].

---

6. Any recovery obtained in a lawsuit brought by a *sociedad en comandita por acciones* belongs to the business entity, not its investors, under the laws of Mexico.

(docket # 20, Exh 1)

(docket # 1 at 2; Exh 1 at 2-5)  The parties' contract, the ISA, was "negotiated by [Loreto Partners] in Maricopa County; executed by [Loreto Partners] in Maricopa, County, and which was . . . performed in Maricopa County, Arizona." (*Id*. at 3)  "Loreto Partners marketed and sold Loreto Bay Development real property in Arizona." (*Id*.)  The ISA necessitated Baja New York to hire more than 40 people in Maricopa County to provide the estimated $100,000,000 worth of services Loreto Partners contracted to purchase. (*Id*.; Tr. 17) The ISA obligated Loreto Partners "simply to repay the monies expended" by Baja New York due and payable at the end of each year. (Tr. at 17-18)  When the worldwide 2007 "recession started, one of the first things to go was the second home market." (Tr. at 18) Citigroup Property Investors, a financial partner of Baja New York, took control of the development project in August, 2007, let Mr. Butterfield go, and hired a new project development manager, Alvarez & Marsal. (Tr. at 18-19) This lawsuit arises directly out of Loreto Partner's breach of the ISA with Baja New York which by "its terms are governed by the laws of the State of Arizona."  (docket # 1, Exh 1 at 3)

The Court finds that the first two prongs of the *Schwarzenegger* test are clearly met: (1) Loreto Partners purposefully directed a substantial portion of its activities in Arizona and consummated the transaction in Arizona; and (2) Loreto Partners performed acts in Arizona by which it purposefully availed itself of the privilege of conducting activities in Arizona. While the burden shifts to Loreto Partners to demonstrate that this Court's exercise of personal jurisdiction over Loreto Partners would be contrary to fair play and substantial justice, this is clearly not the case. Rather, by contracting to have extensive services performed for it in Maricopa County, Arizona, Loreto Partners pur-posefully availed itself of the benefits of doing business in Arizona and could reasonably expect to be haled into court in Arizona. The Court finds that the exercise of jurisdiction in the District of Arizona is fair, just and reasonable. *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

# **FINDINGS OF FACT**

The Court makes the following findings of fact:

1. Defendant TSD Loreto Partners is a Mexican limited liability company known as a "*sociedad en comandita por acciones de capital variable*." Pursuant to the declaration of Jose Antonio Diez de Bonilla-Martinez, a qualified attorney from Mexico, such an entity is a form recognized by the laws of Mexico; is an independent legal entity, having separate patrimony and legal standing from any of its investors or legal representatives under the laws of Mexico; and may sue in its own name in the Mexican courts. A recovery in a lawsuit brought by a *sociedad en comandita* belongs to the business entity, not its investors, under the laws of Mexico. Because Loreto Partners is a juridical person under Mexican law, the citizenship of Loreto Partners' investors is irrelevant for deter-mining subject matter jurisdiction. *Cohn*, 733 F.2d at 629. Loreto Partners is a citizen or subject of Mexico.

2. Plaintiff Baja Developments LLC is a New York limited liability com-pany. All of Baja New York's members and their members, trustees, beneficiaries or partners are citizens of the states of the United States or Puerto Rico.

3. There is no evidence to suggest that Defendant Loreto Partners is in the military service, is an infant or an incompetent person.

4. Loreto Partners carried on substantial business operations in Arizona sufficient for this Court to exercise both specific and general personal jurisdiction over Loreto Partners.

5. Loreto Partners was properly served on January 21 and 23, 2010 by twice serving the Summons and Complaint upon Embree Charles (Chuck) Bedsole, President of Loreto Partners, at his residence in Dallas, Texas. (docket # 13) Mr. Bedsole is an individual who holds a position of authority, currently President of Loreto Partners, Tr. at 20, and managing director of Alvarez & Marsal, the new Loreto Bay Development project manager. (Tr. at 19) He is "so integrated with the organization that he will know what to do with the papers." *Direct Mail Specialists v. Eclat Computerized Technologies, Inc*., 840 F.2d 685,

688 (9th Cir. 1988) (citation omitted). Mr. Bedsole is sufficiently connected to Loreto Partners to deem him authorized to receive service of process on behalf of Loreto Partners because, among others, he is the acting Loreto Partners' President; personally met with Mr. Butterfield in Scottsdale and discussed settlement and negotiated on behalf of Loreto Partners with Baja New York; and exchanged email correspondence with Mr. Butterfield in an effort to settle Baja New York's claims against Loreto Partners raised in this lawsuit. (Tr. at 20-22) This lawsuit was filed when Mr. Butterfield discovered that Loreto Partners was "taking the assets of the company out of the company, transferring them into Mexican trusts, and giving them over to Cit[i]group Property Investors or the - - or Citigroup Mortgage Bank from whom they had borrowed money." (Tr. at 21)

An Affidavit of Service of the Summons and Complaint was filed on March 1, 2010. (docket # 13) Plaintiff Baja New York filed a Notice of Service and Applica-tion to the Clerk for Entry of Default on March 17, 2010, indicating a copy was mailed to Mr. Bedsole. (docket # 15 at 1-2) The Clerk of the Court entered a default against Defendant Loreto Partners on March 18, 2010. (docket # 16)

6. Baja New York and Loreto Partners entered into a contract, called the "Intercompany Services Agreement," attached as Exhibit 1 to the Complaint. Pursuant to the ISA, Baja New York agreed to provide a wide range of services to Loreto Partners. Pursuant to the terms of the ISA, Loreto Partners was contractually obligated to reimburse Baja New York for "all its direct and indirect costs incurred in providing the Services, plus a five percent (5%) fee." (docket 1, Exh 1, ISA at 2, ¶ 3)

7. Baja New York provided a wide range of services to Loreto Partners in the approximate amount of $100,000,000 that generated sales of about $250 million. (Tr. at 17) Although Loreto Partners reimbursed Baja New York for some of its direct and indirect costs, it failed to reimburse Baja New York for all costs incurred, or for all of the 5% fee due, which it was contractually obligated to do under the ISA.

8. Loreto Partners breached the ISA contract with Baja New York, as alleged in Count 1 of the Complaint, entitling Baja New York to recover compensatory damages.

9. Count 2 of the Complaint requests an accounting, so that Baja New York could accurately determine the precise amount that is due and owing to Baja New York for the breaches of contract by Loreto Partners. Because Loreto Partners did not defend this action, or otherwise appear, it was not possible for Baja New York to engage in discovery on its accounting cause of action. For this reason, the evidence that would have been made available to Baja New York was not available at the time the Complaint was filed on April 13, 2009. In its discretion, however, the Court is empowered to draw reasonable inferences from the Complaint and evidence presented at the damages hearing in Baja New York's favor.

10. Loreto Partners created and maintained books and records in the usual course of its business, which are business records of its regularly conducted activity governed by Fed.R.Evid. 803(6), that recorded and tracked the amount of reimbursement and costs due to Baja New York. (Exhs 1-3 at hearing; Tr. 28-34)  According to the best available information from such books and records, Loreto Partners owes Baja New York the sum of $8,442,044.00 for unreimbursed costs and the 5% fee that Loreto Partners is contractually obligated to pay under the ISA. (Exh 3; Tr. 31-32)  This amount of money was reasonably proven by Baja New York's representative, Mr. Butterfield, who testified at the default damages hearing on April 21, 2010.

11. The fair and reasonable amount of compensatory damages to be awarded to Baja New York against Loreto Partners is the sum of $8,442,044.00.

## CONCLUSIONS OF LAW

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Arizona substantive law applies to this diversity action. The Court makes the following conclusions of law:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2), because the amount in controversy exceeds $75,000 and the parties are completely diverse.

2. Personal jurisdiction exists over the Defendant Loreto Partners.

3. Loreto Partners was timely and properly served with the Summons and Complaint by service upon Embree Charles (Chuck) Bedsole, interim President of Loreto Partners, at his residence in Dallas, Texas pursuant to Federal Rule of Civil Procedure 4(h)(1)(B).[7] Because the Court found service of process valid under the Federal Rules of Civil Procedure, it did not consider whether Loreto Partners was lawfully served under state law.[8]

---

[7] Federal Rule of Civil Procedure 4(h)(1)(A) and (B) provides:

> (h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

> (1) in a judicial district of the United States:
> (A) in the manner prescribed by Rule 4(e)(1) [following state law for service of process] for serving an **individual**; or
> (B) by delivering a copy of the summons and of the complaint to **an officer**, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant;

Rule 4(h)(1)(A) and (B), FED.R.CIV.P., (emphasis added).

"In the Ninth Circuit, 'service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process.'" *Gidding v. Anderson*, 2008 WL 4065814, * 2 (N.D.Cal. 2008) (quoting *Direct Mail Specialists v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)). "Service may be made upon a representative so integrated with the organization that he will know what to do with the papers." *Id.* (internal quotation marks and citation omitted). "Service on an individual who holds a position that indicates authority within the organization generally is sufficient." *Id.* "The determination of whether an individual holds sufficient authority in an organization is largely factual." *Id.*

[8] Federal Rule of Civil Procedure 4 contains detailed provisions on the manner in which service should occur, and a plaintiff may utilize the service of process rules that apply in the state in which the federal district court is located or, if service is effected in another

4. This Magistrate Judge has authority to recommend a non-final and independent determination of fact and law that default judgment be entered against Loreto Partners without the consent of Loreto Partners. *Wang v. Masaitis*, 416 F.3d. 992 , 999 (9th Cir. 2005) (holding that the magistrate judge was well within her authority to issue an report and recommendation on Wang's habeas petition without Wang's consent for *de novo* review by district judge); 28 U.S.C. § 636(b)(1)(A); LRCiv. 72.2(a)(1).

5. Baja New York and Loreto Partners are parties to an enforceable contract, called the Intercompany Services Agreement. *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Az.Ct.App. 1983) (components of an enforceable contract under Arizona law).

6. Loreto Partners owed Baja New York the contractual obligation under the ISA to reimburse Baja New York for the direct and indirect costs of providing Loreto Partners with certain services and to pay a 5% fee on such reimbursed amount.

7. Loreto Partners breached its contract with Baja New York by failing to reimburse Baja New York for the direct and indirect costs of providing Loreto Partners with certain services and by failing to pay Baja the 5% fee.

8. At the conclusion of the April 21, 2010 default damages hearing, the Court instructed Baja New York's counsel to file a post-hearing memorandum on the legal issue whether Rule 54(c), Fed. R. Civ. P.,[9] and federal law allows a plaintiff, like Baja New York, to receive a greater sum of money at a default damages hearing, here approximately $1.5

---

state, the rules of that state. Fed.R.Civ.P. 4(e)(1). Therefore, service of process will be upheld if it conforms to either federal or applicable state service of process rules. *Robinson v. Heritage Elementary School*, 2009 WL 1578313, * 2 (D.Ariz. 2009).

[9] Federal Rule 54(c) provides in relevant part:

> (c) Demand for Judgment; Relief to Be Granted. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. . . .

Rule 54(c), FED.R.CIV.P.

million dollars more than the amount pled in the Complaint "estimat-ed to exceed $7,000,000." (docket # 1 at 5, ¶ 15)

The Complaint alleges that "[s]ince August 2007, Loreto Partners has controlled the accounting functions that tracked the sums expended on the provision of services to it under the ISA . . . [and] BAJA New York [did] not have access to information about the precise dollar amount of money it spent providing services to Loreto Partners[,]" until after the Complaint was filed. (Tr. 22-32) Baja New York requested an accounting of the amount of money Loreto Partners owes Baja New York. (docket # 1 at 5-6) Additionally, the Complaint prayed for judgment against Loreto Partners "[f]or compensatory damages in an amount to be proven at trial[.]" (*Id.*)

Baja New York's Post Hearing Memorandum is not particularly helpful but confirms that this issue may "be one of first impression[]" in the Ninth Circuit. (docket # 24 at 1) Nevertheless, courts in the Ninth Circuit have held that "doubts about the actual assessment of damages [awarded at a default hearing] will be resolved against the party who frustrates proof of such, and the factfinder may calculate damages at the highest reasonably ascertainable value." *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D.Cal. 1997) (quoting *Nintendo v. Ketchum*, 830 F.Supp. 1443, 1445-1446, (M.D.Fla. 1993) (cited with approval on other grounds in *Nintendo v. Dragon Pacific International*, 40 F.3d 1007 (9th Cir. 1994)). Other district courts outside the Ninth Circuit have concluded that a complaint seeking compensatory damages "in excess of" the contract purchase price, provides a proper foundation for the amounts sought by plaintiff in default proceedings. *Elderlite Exp., Inc. v. Capitol City Trailers, Inc*.,, 2009 WL 891762, * 3 (S.D.Ohio 2009); *J & P Associates, Inc. v. Specialty Stamping*, 2007 WL 1295725 (E.D.Mich. 2007) (judgment by default for $137,630.42 was entered on a claim for breach of contract in which the complaint sought monetary damages "in excess of one hundred thousand and 00/100 ($100,000) dollars."); *contra Sheet Metal Workers' Nat. Pension Fund v. Frank*, 2005 WL . . .

. . .

1432786, * 8 (E.D.Va. 2005) (monetary award on default would be limited to the actual amount sought in the complaint, notwithstanding the fact that the complaint sought "at least" that amount.).

Because (1) the Complaint's prayer for judgement requested, not a specific amount, but rather "compensatory damages in an amount to be proven at trial[,]" docket # 1 at 6; (2) Baja New York was forced to allege a minimum estimate of the amount of its damages that "exceeds $7,000,000" as a result of Loreto Partners' possessing all the accounting books and records when the Complaint was filed; and (3) the Complaint provided Loreto Partners fair notice that Baja New York was seeking a significant, multi-million dollar award and served as sufficient and proper foundation for the amount of money sought by Baja New York in the default hearing, the Court concludes that Baja New York should be awarded its total compensatory damages reasonably proven at the default damages hearing. Therefore, Baja New York is entitled to compensatory damages in the amount of $8,442,044.00 plus interest at the legal rate from the date the Judgment is entered to the date the Judgment is paid in full.

9. Arizona Revised Statute ("A.R.S.") § 12-341.01(A) provides that "[i]n any contested action arising out of contract . . ., the court may award the successful party reasonable attorney fees. . . ." A.R.S. § 12-341 provides that "[t]he successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law."

10. In federal diversity actions, Arizona law generally determines the rate of prejudgment interest but post-judgment interest is governed by federal law. 28 U.S.C. § 1961; *Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998). An exception to § 1961 exists when the parties specifically, contractually agree to waive § 1961's application.[10] *Id.*; *Fidelity Federal Bank, FSB v. Burga Ma Corp.*, 387 F.3d 1021, 1023 (9th

---

[10] The parties' ISA does not address the issues of prejudgment or post-judgment interest or the entitlement to an award of reasonable attorneys' fees to the prevailing party

Cir. 2004). As to post- judgment interest, Baja New York is entitled to post-judgment interest at the federal rate pursuant to 28 U.S.C. § 1961, to be calculated by the Clerk of the Court from the date of the entry of judgment.[11]

11. Under A.R.S. § 44-1201(A), "[i]nterest on any loan, indebtedness, **judgment** or other obligation shall be at the rate of ten percent per annum, unless a different rate is contracted for in writing . . . ." A.R.S. § 44-1201(A) (emphasis added).

12. A.R.S. § 44-1201 sets the pre-judgment and post-judgment interest rate at ten percent simple interest per annum. *Collins v. D.R. Horton, Inc*., 361 F.Supp.2d 1085, 1094 (D. Ariz. 2005), *affirmed by* 505 F.3d 874 (9th Cir. 2007). Under Arizona law, "'prejudgment interest on a liquidated claim is a matter of right.'" *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1103 (9th Cir. 2001) (quoting *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996) (en banc)); *Precision Heavy Haul, Inc. v. Trail King Industries, Inc*., ___ P.3d. ___, 580 Ariz. Adv. Rep. 8 (Az.Ct. App. 2010).

Because Baja New York did not request an award of pre-judgment interest in its Complaint, no evidence was presented at the April 21, 2010 default damages hearing when Baja New York provided to Loreto Partners "sufficient information and supporting data so as to enable the debtor to ascertain the amount owed[,]" and Baja New York's Post Hearing Memorandum expressly "concedes it is not entitled to prejudgment interest here," docket # 24 at 3, pre-judgment interest will not awarded to Baja New York. *Homes & Son Constr. Co. Inc. v. Bolo Corp*., 22 Ariz.App. 303, 526 P.2d 1258, 1261 (Az.Ct.App. 1974); *Silge v. Merz*, 510 F.3d 157, 159-162 (2nd Cir. 2007) (Prejudgment interest may be awarded

_____

in the event of litigation arising from the ISA. (docket 1, Exh at 2-5); *First Ascent Ventures, Inc. v. DLC Dermacare LLC*, 2007 WL 1876376 * 1 (D.Ariz. 2007) (a contractual fee provision controls to the exclusion of the A.R.S. § 12-341.01(A) governing attorney fees).

[11] Per 28 U.S.C. § 1961(a), post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a) (footnote omitted).

by default judgment only if demanded in the complaint. A boilerplate demand "for such other and further relief which the Court deems just" is not an adequate demand for prejudgment interest.); *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1277 n. 6 (9th Cir. 2006) ("The inclusion of language in the remedies section seeking 'such other and further relief as the court may deem proper' is mere boilerplate, meant to cover all bases as to the claims asserted in the complaint. That boilerplate language does not constitute a claim not already asserted in the complaint . . .").

13. Plaintiff Baja New York requests an award for its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01[12] in the amount of $71,346.50.00[13] based upon counsels' various billing rates actually billed to Baja New York and their exercise of, what the Local Rules refer to as, "billing judgment." (docket # 18-1, Exh 1 at 3-4, Declaration of Thomas J. Morgan in Support of Plaintiff's Memorandum).

The Arizona Supreme Court has acknowledged that A.R.S § 12-341.01 vests trial courts with broad discretion in assessing attorneys' fees. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181, 1184 (Ariz.1985). Arizona's attorneys' fees statute permits a prevailing party to recover reasonable attorney's fees "[i]n any **contested** action arising out of a contract, express or implied. . . ." A.R.S § 12-341.01 (emphasis added). An

---

[12] Arizona Revised Statutes § 12-341.01 which provides, in relevant part:

> A. In any contested action arising out of contract, express or implied, the court may award the successful party reasonable attorney fees . . . .

> B. The award of reasonable attorney fees pursuant to subsection A should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equate or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid.

A.R.S § 12-341.01 (emphasis added).

[13] Note: this fee amount does not include the approximate one hour incurred on the date of the default damages hearing and the time incurred in researching and drafting the post-hearing memorandum.

award of attorneys fees under section A.R.S. § 12-341.01 is discretionary, but "it is the clear intent of the statute that under ordinary circumstances the successful party in an action which falls under the statute is entitled to recover reasonable attorney's fees." *G & S Investments v. Belman*, 145 Ariz. 258, 268, 700 P.2d 1358, 1368 (Az.Ct.App. 1984). However, neither Plaintiff's Application for Default and Default Hearing Memorandum, docket # 20, nor Plaintiff's Motion for Award of Attorneys' Fees and Costs, docket # 18, address the question whether Baja New York, the prevailing party in this action, is entitled to an award of reasonable attorneys' fees incurred in obtaining an uncontested default judgment. The Court concludes that Arizona law precludes such a recovery.

In *Morrison v. Shanwick*, 167 Ariz. 39, 46, 804 P.2d 768, 775 (Az.Ct.App. 1990), the Arizona Court of Appeals defined a "contested action" within the context of A.R.S. § 12-341.01(A):

> We believe a contested action is one in which the defendant has appeared and generally defends against the claims and demands made by the plaintiff. Conversely, an action is not contested, or "uncontested," simply because the defendant admits in his answer the true facts of the case.

804 P.2d at 775. Other Arizona federal judges have recognized *Morrison* as determinative of Arizona law declining an award of attorneys' fees incurred in obtaining an uncontested, default judgment. *Lewis v. Smith*, 2009 WL 2106287 * 1 (D.Ariz. 2009); *BBQ Hut, Inc. v. Maelin Enterprises, LLC*, 2008 WL 2687685, at * 2 (D.Ariz. 2008) ("Because defendants appeared and, at least initially, denied the allegations of the complaint, this was a 'contested action.'" citing *Morrison*). Although this is a harsh and unfair result in this case, this Magistrate Judge is compelled to decline Baja New York's request for an award of its reasonable attorneys' fees incurred in this uncontested action because A.R.S. § 12-341.01(A) and the parties' contract, docket 1, Exh at 2-5, do not authorize such an award. *First Ascent Ventures, Inc. v. DLC Dermacare LLC*, 2007 WL 1876376 * 1 (D.Ariz. 2007) (a contractual fee provision controls to the exclusion of the A.R.S. § 12-341.01(A) governing attorney fees).

. . .

14. Non-taxable costs are not recoverable under A.R.S. § 12-341.01. *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, 402-404, 973 P.2d 106, 107-109 (Ariz. 1999). Additionally, the parties' ISA does not address whether the prevailing party is entitled to recover its non-taxable expenses and costs. *Schritter v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 391, 394, n. 5, 36 P.3d 739, 742, n. 5 (Ariz. 2001) ("under section 12-332.A.6, the parties may agree to share [otherwise nontaxable] costs or impose them on the losing party."). Baja New York, therefore, is not entitled to recover the cost of photocopying, delivery charges, local or long distance calls, messenger services, unidentified professional services and other itemized miscellaneous expenses. *CenTrust Mortgage Corp. v. PMI Mortgage Ins. Co.*, 166 Ariz. 50, 800 P.2d 37, 45-46 (Ariz.Ct. App. 1990). Ordinarily, Baja New York would be entitled to recoup its costs of computerized legal research (Westlaw) in the sum of $1,805.20, docket # 18-2 at 30. *Ahwatukee Custom Estates Mgmt. Ass'n*, 973 P.2d at 108-09 ("[a]ttorneys' fees awards can include the cost of computerized legal research."). Because recovery of computerized legal research fees is derivative of an award of attorneys' fees, which has been denied in this case, the Court will also deny Baja New York's request for recovery of its computerized legal research fees.

15. Federal law governs the award of taxable costs. *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995). Baja New York may recover its taxable costs by strict compliance with Rule 54(d)(1), FED.R.CIV.P., and LRCiv 54.1(a).

Accordingly,

**IT IS RECOMMENDED** as follows:

1. that Baja New York's Application for Entry of Default Judgment and Default Hearing Memorandum, docket # 20, against Loreto Partners be **GRANTED**;

2. that Baja New York's Motion for Award of Attorneys' Fees and Costs *etc*, docket # 18, be **DENIED**;

3. that Judgment be entered in favor of Plaintiff Baja New York and against Defendant Loreto Partners in the amount of $8,442,044.00 with interest thereon at the annual federal rate from the date of entry of this Judgment until paid in full.

**IT IS FURTHER ORDERED** that if this Report and Recommendation is approved by District Judge Wake or if he otherwise directs, the Clerk is kindly directed to enter Judgment consistent with this Order pursuant to Rule 58(a), (b)(2), FED.R.CIV.P.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1), as amended on December 1, 2009[14]; Rules 72 and 6, Federal Rules of Civil Procedure, as amended on December 1, 2009. Thereafter, the parties have seven (7) days within which to file a response to the objections. Failure to file timely objections to this Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *United States v. Reyna- Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of this Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this Magistrate Judge's recommendations. Rule 72, Federal Rules of Civil Procedure.

DATED this 30th day of April, 2010.

Lawrence O. Anderson
United States Magistrate Judge

---

[14] See, Statutory Time-Periods Technical Amendments Act of 2009. H.R. 1626.